UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

MAYVELIN DE LA ROSA MARTINEZ,

                Plaintiff,

      -against-                           MEMORANDUM DECISION
                                                   AND ORDER
HARBOR EXPRESS, LLC and PAT SALMON
& SONS, INC.,                               15 Civ. 7458 (GBD) (VF)
                                                     (Lead Case)
                Defendants.

------------------------------------x

------------------------------------x

JUAN RIVERA, *as Administrator of the
Estate of Aaron Leon*,

                Plaintiff,

                                                   15 Civ. 7483 (GBD) (VF)
     -against-                             (Member Case)

HARBOR EXPRESS, LLC and PAT SALMON
& SONS, INC.,

                Defendants.

------------------------------------x

GEORGE B. DANIELS, United States District Judge:

      This consolidated action arises out of a motor vehicle accident in the State of New Jersey. Plaintiffs, Mayvelin De La Rosa Martinez ("De La Rosa") and Aaron Leon ("Leon"), sustained personal injuries from the accident, which involved vehicles belonging to the Defendants, Harbor Express, LLC ("Harbor Express") and Pat Salmon & Sons, Inc ("Pat Salmon"). To facilitate settlement negotiations, this Court is tasked with resolving a choice-of-law conflict: whether New Jersey's or New York's loss-allocation rules control. This Court finds that both Defendants are subject to New Jersey's loss-allocation rule.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

On August 31, 2013, a collision involving three vehicles occurred on the eastbound lanes of Interstate 78 in New Jersey. (Report and Recommendation ("Report"), ECF No. 132, at 2–3.)[2] Involved in the collision were: (1) a Harbor Express tractor-trailer, (2) a Pat Salmon tractor-trailer, and (3) a Honda, driven by a non-party and occupied by Plaintiffs. (*Id.* at 3.) Harbor Express is a citizen of New Jersey, Pat Salmon is a citizen of Arkansas, and Plaintiffs are citizens of New York. (*Id.* at 11 n.7.)

After the collision, De La Rosa filed suit against Defendants in the Supreme Court of New York, County of Bronx. (Def.'s Mem. in Supp. of Mot. for Consolidation ("Consolidation Mem."), ECF No. 13, at 2.) Leon, through his Guardian Maria Then, filed a similar suit in the Supreme Court of New York, County of New York. (*Id.*) Both suits were removed by Pat Salmon to the United States District Court for the Southern District of New York and consolidated. (*Id.*; Ord. to Consolidate Civ. Action, ECF No. 15.)

On April 10, 2024, the parties represented in a letter that settlement "would become eminently achievable" if this Court were to decide the choice-of-law conflict at issue. (Letter to Judge Figueredo, ECF No. 173.) In response, this Court allowed the parties to file letters supplementing their prior briefing on this issue. (Letter to Judge Figueredo, ECF No. 174.)

## II. LEGAL STANDARD

In a diversity suit, "federal courts apply the choice of law rules of the forum state, in this case, New York." *Gilbert v. Seton Hall University*, 332 F.3d 105, 109 (2d Cir. 2003) (citing *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496–97 (1941)). In New York,

---

[1] The relevant factual and procedural background is set forth in greater detail in this Court's Memorandum Decision and Order adopting Magistrate Judge Freeman's Report and Recommendation in full. (*See* ECF No. 140.)

[2] All ECF citations herein refer to documents filed under the lead case, 15 Civ. 7458.

2

the first step in the choice-of-law analysis "involves determining whether the laws of different jurisdictions actually conflict." *Leach v. Kaykov*, No. 07-CV-4060, 2010 WL 1813772, at *1 (E.D.N.Y. Apr. 2, 2010) (citations omitted). Such conflict exists between different systems of loss allocation. *See id.* (finding a genuine conflict between New Jersey's and Pennsylvania's loss-allocation rules). When such a choice-of-law conflict exists with respect to a loss-allocation issue New York uses the three-rule framework developed in *Neumeier v. Kuehner*, 286 N.E.2d 454, 454 (N.Y. 1972), to determine which state's laws control. *See Edwards v. Erie Coach Lines Co.*, 17 N.Y.3d 306, 321, 331 (2011).

This framework "by [its] very nature call[s] for a plaintiff-by-defendant inquiry," meaning that the framework is applied to each defendant individually. *Id.* at 329. Under the first *Neumeier* rule, if both the plaintiff and defendant "are domiciled in the same state . . . the law of that state should control." *Neumeier*, 286 N.E.2d at 454. The second rule states that the laws of the place of the accident generally control when the parties are "domiciled in different states and the law of the place where the accident occurred favors its domiciliary." *Edwards*, 17 N.Y.3d at 321 (citing *Neumeier*, 286 N.E.2d at 454). In other words, when one state's law favors the party from that state, the place of injury generally governs. *Id.* When the parties are domiciled in different states, but the second rule is inapplicable, the third *Neumeier* rule applies. *Id.* The third rule states that "the law of the state where the accident occurred governs unless 'it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants.'" *Id.* (quoting *Neumeier*, 286 N.E.2d at 454). This rule has been applied when the parties are domiciled in different states and the injury occurs in a third jurisdiction. *Leach v. Kaykov*, No. 07CV4060KAMVVP, 2010 WL 1813772, at *3 (E.D.N.Y. Apr. 2, 2010).

### III. NEW JERSEY'S LOSS-ALLOCATION RULES APPLY

Plaintiffs urge this Court to apply New York's loss allocation rules. (*See* ECF No. 176, at 5; Memorandum of Law in Opposition to Def. Harbor Express, LLC's Motion For Summary Judgment ("Leon Opp."), ECF No. 98, at 23.) Because Pat Salmon is domiciled in Arizona, De La Rosa argues that the claim's only connection to New Jersey is that the accident happened to occur there. (ECF No. 176, at 5.) Even though Harbor Express is domiciled in New Jersey, De La Rosa argues, New Jersey's interest in the application of its loss-allocation laws to this case do not outweigh New York's. (*Id.* at 4) Leon argues that, although New Jersey law would normally control for Harbor Express under the second *Neumeier* test, an exception for public policy should be made and New York law should govern. (Leon Opp. at 23–24.)

Defendants argue that New Jersey's joint and several liability laws should apply. (ECF No. 175, at 1.) They assert that "under the Third *Neumeier* analysis, New Jersey law, as the *lex loci delicti*, the law of the place of the tort, must apply." (*Id.* at 2.) Furthermore, Defendants claim that if this Court allows for New York law to be applied under the third *Neumeier* test's exception, this Court will be "favor[ing] New York's interests over that of Arkansas," which is fatal under the interests analysis required by the third rule. (*Id.* at 2–3.)

#### A. A Genuine Choice-of-Law Conflict Exists

This Court finds, and both parties agree, that a genuine choice-of-law conflict exists as to which jurisdiction's loss-allocation rules apply.[3] Plaintiffs are domiciled in New York, Defendant Pat Salmon is domiciled in Arkansas, and Defendant Harbor Express is domiciled in New Jersey. (Report at 11 n.7.) The accident occurred in New Jersey. (*Id.* at 2–3.) New York has a pure joint

---

[3] (*See* ECF No. 175 ("On the issue of joint and several liability, a true conflict of laws exists in this matter."); ECF No. 176 ("There is an actual conflict. . . . NY requires only that a tortfeasor be but 1% at fault to be responsible for the entire judgment [] while in New Jersey the general rule is that a tortfeasor must be at least 60% at fault." (alteration in original)); Memorandum of Law in Opposition to Def. Harbor Express, LLC's Motion for Summary Judgment, ECF No. 98, at 23–25.)

4

and several liability scheme; New Jersey has a modified joint and several liability scheme. C.P.L.R. § 1602(6); N.J.S.A. 2A:15-5.3. Therefore, a "genuine conflict" exists. *See Leach*, 2010 WL 1813772 at *1.

In accordance with *Neumeier*, this Court analyzes the Plaintiffs' claims against Harbor Express and Pat Salmon individually to determine which state's loss-allocation rules apply as to each defendant. *Edwards*, 17 N.Y.3d at 329.

### B. Under the Second *Neumeier* Rule, New Jersey Law Controls for Harbor Express, LLC

Harbor Express is subject to New Jersey's loss-allocation rules. Here, the first *Neumeier* rule is inapplicable because Harbor Express, Leon, and De La Rosa are not domiciled in the same state. (*See* Report at 11 n.7.) Under the second *Neumeier* rule, the law of the state in which the accident occurred applies if the law of that state favors the party domiciled there. *See Neumeier*, 286 N.E.2d at 454. Here, the accident occurred in New Jersey, where Harbor Express is domiciled but Plaintiffs are not. (*See* Report at 11 n.7.) New Jersey's modified joint and several liability scheme is more favorable to Harbor Express than New York's pure joint and several liability scheme is; thus, under the second *Neumeier* rule, New Jersey's law applies. *Neumeier*, 286 N.E.2d at 454.

Leon concedes that New Jersey law would ordinarily apply under the second *Neumeier* test but argues for a public policy exception in favor of New York law, claiming that an application of New Jersey law would "thwart the significant [New York interest] in protecting its own domiciles' ability to sue in its forum." (Leon Opp. at 23–24.) Under New York law, a party who invokes a policy exception to avoid the application of a foreign law carries the heavy burden to establish that the foreign law contravenes "some fundamental principle of justice, some prevalent conception of

5

good morals, [or] some deep rooted tradition of the common weal." *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 202 (1985) (quoting *Loucks v. Standard Oil Co.*, 224 N.Y. 99, 111 (N.Y. 1918)). Leon has not pointed to any specific state public policy rooted in New York's Constitution, statutes, or judicial decisions that an application of New Jersey law would violate—a required showing for a public policy exception to apply. *See id.*

Through its policy, New Jersey has articulated a clear interest in protecting its residents from full liability when they are less than 60% responsible for the injury at bar. While New York certainly has some interest in protecting its residents by providing them with increased access to damages payments through a pure joint and several liability scheme, this interest does not outweigh New Jersey's purposes in enacting their loss allocation laws. Thus, any interest that New York has in the application of its laws is at least matched by New Jersey's interest in applying New Jersey law. That New York resources have been used to treat Plaintiffs' injuries does not entitle the state to having its law applied. Indeed, even Leon's cited authority is inapposite. Neither *Huang v. Lee*, 734 F.Supp. 71 (E.D.N.Y. 1990), nor *Scharfman v. Nat'l Jewish Hosp. and Research Ctr.*, 122 A.D.2d 939 (N.Y.S.2d 1986), applies *Neumeier* at all. *See Huang*, 734 F.Supp. at 72; *Scharfman*, 122 A.D.2d at 940.

In sum, the second rule set out in *Neumeier* applies here, and New Jersey's modified joint and several liability rule is not so repugnant to a fundamental policy of New York such that it should not be applied. New Jersey law controls as to Defendant Harbor Express.

## C. Under the Third *Neumeier* Rule, New Jersey Law Controls for Pat Salmon & Sons, Inc.

New Jersey's loss-allocation rules also control as to Defendant Pat Salmon & Sons, Inc. Since Plaintiffs are domiciled in New York, Pat Salmon is domiciled in Arkansas, and the accident

occurred in the third state of New Jersey, the third *Neumeier* rule governs this analysis. *See Edwards*, 17 N.Y.3d at 321 (citing *Neumeier*, 286 N.E.2d at 454).

New Jersey law governs under the third *Neumeier* rule "unless 'it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants.'" *Edwards*, 17 N.Y.3d at 321 (quoting *Neumeier*, 286 N.E.2d at 454). De La Rosa argues that because "New Jersey has no contact with this case except for the purely adventitious circumstance that the accident occurred there" and because De La Rosa is domiciled in New York, New York law should control. (ECF No. 176, at 4–5 (internal quotations omitted)). However, this is not a reason to displace the typical rule that the law of the injury situs governs. Thus, applying New York's law would be improper under the third *Neumeier* rule, and New Jersey's law applies.

As discussed above, New Jersey's interests in enforcing its loss allocation laws are at least as strong as New York's. Furthermore, allowing plaintiffs to "carry around with them the loss allocation laws of their domicile wherever they happen to travel" would both impair the functionality of the multi-state system and produce great uncertainty for defendants, who would be subject to a set of rules they would not know until the residence of the injured person was revealed. *Leach*, 2010 WL 1813772 at *6. Nor do New York residents have an inherent right to the application of New York law in cases appropriately governed by a different jurisdiction's rules.

De La Rosa's cited authority contains material distinctions from the instant case. *Gilbert v. Seton Hall University* and *Schultz* concern charitable immunity, the application of which furthers different interests than those at bar. *Gilbert v. Seton Hall Univ.*, 332 F.3d 105, 109 (2d Cir. 2003); *Schultz*, 65 N.Y. 2d at 194. The *Gilbert* court's interests analysis consists almost entirely of a

7

discussion of charitable immunity. *See Gilbert*, 332 F.3d at 111–12. Moreover, the *Schultz* court's statement that a locus jurisdiction has a minimal interest in applying its own loss-allocating rule refers to situations in which the parties share a common domicile that is not the site of the accident, a situation that would fall under the first *Neumeier* rule. *Schultz*, 480 N.E.2d at 687. That court's discussion of the third *Neumeier* rule also invokes interests that are not at play in the instant case. *See id.* (holding that the law of plaintiff's domicile applied even though it disfavored plaintiff, in part to promote charitable activities in that state). Finally, the court did not conduct a *Neumeier* analysis in *Thomas v. Hanmer*. *See generally Thomas v. Hanmer*, 489 N.Y.S.2d 802 (N.Y. App. Div. 4th Dept. 1985).

De La Rosa also cites to *Sheldon v. PHH Corp.*, 135 F.3d 848 (2d Cir. 1998), and *Erny v. Estate of Merola*, 792 A.2d 1208 (2002). (*See* ECF No. 176, at 3–4.) These two cases are readily distinguishable. The court in *Sheldon* was concerned with whether a cause of action existed for loss of parental consortium, which simply does not apply here. *Sheldon*, 135 F.3d at 853. Moreover, the defendant in *Sheldon* had its principal place of business in the plaintiffs' domicile (New York), leading the court to find that New York had a strong interest in governing liability for businesses headquartered in the state. *Id.* at 854. Taken together, these factors led the court to find that New York was "the only state with an important interest in applying its law." *Id.* That is far from the case here. As discussed above, New Jersey has a strong interest in the application of its laws, and New York's comparative interests are much weaker than in *Sheldon*. *See id.* In *Erny*, on the other hand, the New Jersey Supreme Court applied *New Jersey's* choice-of-law analysis, not New York's. *See Erny v. Estate of Merola*, 792 A.2d 1208, 1212 (N.J. 2002). New Jersey's choice-of-law test differs from New York's in a few notable ways, including that the balance of governmental interests is the essence of the test. *See id.* at 1216–19.

8

Finally, although Pat Salmon is not domiciled in New Jersey, the considerations previously outlined with respect to competing state interests and preventing uncertainty for defendants still apply. Plaintiffs have not demonstrated that an application of New York law would more strongly serve the purposes of the law or would not create increased uncertainties for defendants. Thus, like Harbor Express, Pat Salmon is subject to the laws of New Jersey.

## IV. CONCLUSION

A genuine conflict of laws exists in this case; therefore, a choice-of-law analysis is warranted. Under New York law, the *Neumeier* framework dictates which state's loss-allocation rules control as to each, separate defendant. Under the second *Neumeier* rule, Harbor Express is subject to New Jersey law. Under the third *Neumeier* rule, Pat Salmon is also subject to New Jersey law. New Jersey's modified joint and several liability scheme applies to both Defendants.

Dated: DEC 19 2024

New York, New York

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge